IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WASEEM DAKER,<br>　　Plaintiff,<br>　　　　v.<br>REDFIN CORPORATION, INC.,<br>　　Defendant. | Civil Action No.<br>1:20-cv-02561-SDG |

**OPINION AND ORDER**

This matter is before the Court for consideration of the Order and Final Report and Recommendation (R&R) entered by United States Magistrate Judge John K. Larkins, III [ECF 60], which recommends that Defendant Redfin Corporation, Inc.'s motion to dismiss [ECF 48] be granted and that Plaintiff Waseem Daker's claims be dismissed. Daker objected to the R&R [ECF 65], and Defendant Redfin Corporation, Inc. filed a response [ECF 66]. Daker then filed a reply [ECF 67]. The Federal Rules make no provision for the filing of a reply in response to an objection to a report and recommendation, Fed. R. Civ. P. 72(b)(2), and the Local Rules now make clear that such replies may not be filed without leave of court, LR 72.1(E), NDGa. Because Daker's reply was filed before the amendment to the Local Rules, the Court has considered it. However, Daker is cautioned that future reply briefs filed without prior leave will be disregarded. Having reviewed the record in light of Daker's objection and reply, the Court

**OVERRULES** the objection, **ADOPTS** the R&R as the Order of this Court as modified herein, and **DISMISSES** this action.

**I.      Background**

Daker initiated this action asserting diversity jurisdiction under 28 U.S.C. § 1332. In the operative complaint, Daker raises the following Georgia state law claims: (1) tortious interference with contract; (2) intentional infliction of emotional distress; and (3) "unethical hiring practices."[1] Briefly, as described in the R&R,[2] Daker alleges that he entered into a contract to sell real property to Mohammed Kashif Anwer. Mohammed Anwer was represented in the transaction by his wife (Sheena Anwer) and her supervisor (Kelley Sweet). Both Sheena Anwer and Sweet were Redfin employees. Mohammed Anwer requested three amendments to the purchase contract, the last of which Daker refused. Thereafter, Daker contends that Sheena Anwer threatened to "ride out" the contract and then walk away on the closing date to keep the property off the market for three weeks.

Eventually, Mohammed Anwer proposed mutual termination of the contract, which Daker also refused. Sheena Anwer then again allegedly threatened to "ride out" the contract to keep the property off the market. Mohammed Anwer

---

[1]   ECF 12.

[2]   The following factual description is adopted from the more extensive factual discussion in the R&R (ECF 60, at 2–3).

unilaterally terminated the contract. Daker contends that Mohammed Anwer breached the agreement, causing him damages and emotional distress. Daker also seeks punitive damages.

Redfin moved to dismiss, contending that Daker failed to state a claim.[3] The magistrate judge agreed. First, Judge Larkins concluded the tortious interference claim failed because Redfin, Sheena Anwer, and Sweet were not strangers to the contract.[4] As a real estate broker/agent, Redfin had an agency relationship with Mohammed Anwer, one of the parties to the contract.[5] Under Georgia law, an agent for a party is not a stranger to the agreement and cannot commit tortious interference.[6]

Next, the R&R explains that the claim for intentional infliction of emotional distress (IIED) failed because the conduct described in the Amended Complaint was not sufficiently outrageous under Georgia law.[7] Finally, there is no "unethical hiring practices" cause of action in Georgia.[8] To the extent Daker was attempting

---

[3] ECF 48.

[4] ECF 60, at 6.

[5] *Id.*

[6] *Id.* at 5–6 (citing *Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 269 Ga. 604, 608–09 (1998)).

[7] *Id.* at 8 (citing, *inter alia*, *Northside Hosp., Inc. v. Ruotanen*, 246 Ga. App. 433, 435 (2000)).

[8] *Id.* at 10.

to raise a claim of negligent hiring or retention, the R&R noted that the pleading did not contain the necessary allegations that Sheena Anwer and Sweet were unsuited for their jobs and that Redfin knew or should have known this.[9]

## II.     Standard of Review

A party challenging a report and recommendation issued by a United States Magistrate Judge must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). Absent objection, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and need only satisfy itself that there is no clear error on the face of the record. Fed. R. Civ. P. 72(b). "Frivolous, conclusive, or general objections need not be considered by the district court." *Schultz*, 565 F.3d at 1361 (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)).

## III.    Discussion

### A.     Timeliness

Redfin argues that the Court should not consider Daker's objection because it was untimely.[10] However, the Eleventh Circuit has directed that courts should

---

[9]   *Id.* at 10–11.

[10]  ECF 66, at 1-2.

deem a *pro se* prisoner's submissions filed as of the date he delivers them to prison authorities for mailing; absent evidence to the contrary, courts should assume the prisoner provided his filing to prison officials on the date he signed it. *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014). Moreover, it appears that Daker was moved to a different prison facility after the R&R was mailed but before the response deadline had run.[11] On June 7, 2023, the Court directed that the R&R be served on Daker at his then-current address and gave him 28 days to file an objection (not including the additional three days for mailing in each direction provided for under Fed. R. Civ. P. 6(d)).[12]

While Daker's objection was docketed after the deadline, it is dated July 5, 2023 — within the timeframe set by the Court for Daker to object. There is no evidence in the record that Daker did not deliver the objection to prison authorities for mailing on that date. Accordingly, the Court treats the objection as timely filed.

### B.   Tortious Interference

Daker first objects that the Magistrate Judge erred in determining that Redfin, and its employees Sheena Anwer and Sweet, were not strangers to the contract. Daker cites *Atlanta Market Center Management Co. v. McLane*, 269 Ga. 604, 606 (1998), for the proposition that, to be an agent under Georgia law, the

---

[11]   ECF 62 (notice of change of address); ECF 63 (mail returned as undeliverable).
[12]   ECF 64.

individual in question must be "vested with authority, real or ostensible, to create obligations on behalf of [the principal] and bring[ ] third parties into contractual relations with [the principal]."[13] According to Daker, real estate agents do not have that power. Daker further argues that, "in order to not be a stranger to the contract, Redfin would have to be a third-party beneficiary from the contract," and there is no evidence that Redfin was a third-party beneficiary.[14] Daker also objects—for the first time—that the contract stipulated that Sheena Anwer would not receive a commission from the real estate sale.[15] Finally, Daker contends that it is a disputed question of fact whether Sheena Anwer was Mohammed Anwer's agent, an issue that cannot be determined at the motion to dismiss stage.[16]

To state a claim for tortious interference under Georgia law, the plaintiff must allege that the defendant: "(1) acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with [the plaintiff]; and (4) caused the plaintiff financial injury." *Cook Pecan Co., Inc. v. McDaniel*, 344 Ga. App. 370, 374 (2018). To establish a claim, the plaintiff must

---

[13]   ECF 65, at 3–4.

[14]   *Id.* at 4.

[15]   *Id.*

[16]   *Id.* at 5.

allege that the tortfeasor is an "intermeddler." *High Tech Rail & Fence, LLC v. Cambridge Swinerton Builders, Inc.*, 363 Ga. App. 226, 231 (2022). When the alleged tortfeasor is not a stranger to the contract or the business relationship giving rise to the contract—that is, where "the defendant had a legitimate interest in either the contract or a party to the contract"—he cannot be liable for tortious interference. *Id.* (citation omitted).

In *Atlanta Market Center*, the Georgia Supreme Court noted that the stranger doctrine covers more than just the agents of a party to a contract, third-party beneficiaries, and those with a direct economic interest in the contract. 269 Ga. at 609. "To be liable for interference with contractual or business relations, one must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract. In other words, all parties to a comprehensive interwoven set of contracts are not liable for tortious interference with any of the contracts or business relationships. *Carey Station Village Home Owners Ass'n, Inc. v. Carey Station Village, Inc.*, 268 Ga. App. 461, 463 (2004) (cleaned up). "A tortious interference claim requires, among other things, wrongful conduct by the defendant without privilege; 'privilege' means . . . a legitimate relationship of the defendant to the contract, so that he is not considered a stranger, interloper, or meddler." *LaSonde v. Chase Mortg. Co.*, 259 Ga. App. 772, 773 (2003).

Indeed, in *Atlanta Market Center* itself, the court adopted the line of cases from the Georgia Court of Appeals that "reduce[d] the number of entities against which a claim of tortious interference with contract may be maintained." 269 Ga. at 609. For example, under Georgia law, a subdivision's homeowners' association is not a "stranger" to a contract between a developer and a lot purchaser in the subdivision. *Carey Station Village*, 268 Ga. App. at 463. A city police department and the chief of police are not strangers to a contract between a security company and off-duty police officers in that department. *Cox v. City of Atlanta*, 266 Ga. App. 329, 332–33 (2004).

Here, Redfin and its employees were engaged to assist the buyer in negotiating the purchase of Daker's home and to advise the buyer about the home-purchasing process. O.C.G.A. § 43-40-1(2). The services they were to provide were clearly interwoven with the purchase agreement. Real estate agents and brokers are expected to advise their clients about real estate transactions, and promote the interests of the buyer or seller by whom they are engaged. *See, e.g.*, O.C.G.A. §§ 10-6A-5, -7. To hold otherwise would serve to inappropriately chill the relationship between real estate agents and their clients which would be contrary to public policy and the public good. *Culpepper v. Thompson*, 254 Ga. App. 569, 572 (2002) ("[I]f a legitimate complaint made in good faith and based upon the acts or omissions of an employee, who had failed or refused to properly perform the

duties of his job, could constitute tortious interference with a contract of employment, then this would chill any complaints about service by the public, which would be contrary to public policy and the public good.") (citation omitted). Redfin was not a stranger to the purchase contract for Daker's home whether or not it was a third-party beneficiary of that contract.

The Court further concludes that the Magistrate Judge did not err in determining that Daker's tortious interference claim could be dismissed at the motion to dismiss stage. This Court need not accept as true Daker's conclusory assertion that Redfin, through its employees, was a stranger to the contract. "Though couched as a factual allegation, this constituted a mere legal conclusion. . . . No facts were alleged to support this conclusion." *Mabra v. SF, Inc.*, 316 Ga. App. 62, 65 (2012); *see also N.E. Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 297 Ga. App. 28, 33–34 (2009) (affirming dismissal of a tortious interference claim where the pleading made clear that the defendant was not a stranger to the business relationship); *LaSonde*, 259 Ga. App. at 773–74 (upholding dismissal for failure to state a tortious interference claim where the defendant was not a stranger to the contract).

### C. Intentional Infliction of Emotional Distress

Daker next contends that the Magistrate Judge erred in determining that his intentional infliction of emotional distress claim failed to allege conduct that was

sufficiently extreme or outrageous. Daker argues that Sheena Anwer's actions in "unethically threat[ening] to ride out the contract" and keep the property off the market for an additional three weeks in response to Daker's refusal to accede to a contract amendment amounted to extortion and coercion.[17] Daker insists that a jury could "reasonably infer from any threats that the threatening party intends to inflict emotional distress on the threatened party."[18] He further contends that this Court should liberally construe his pleading such that his failure to allege that "he suffered emotional distress so severe that no reasonable person could be expected to endure it" is not fatal to his claim.[19] Finally, he purports to amend his complaint to now state that he suffered such emotional distress.[20]

However, as the Magistrate Judge noted, the issue of "whether certain conduct is sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress is a question of law."[21] The standard is an objective one. *Mayorga v. Benton*, 364 Ga. App. 665, 686 n.30 (2022); *Jarrad v. United Parcel Serv., Inc.*, 242 Ga. App. 58, 61–62 (2000). This requires the plaintiff to allege outrageous actions that would cause distress "so severe that no reasonable person

---

17   ECF 65, at 7–8.
18   *Id.* at 8.
19   *Id.* at 9.
20   *Id.*
21   ECF 60, at 8 (citing *Cottrell v. Smith*, 299 Ga. 517, 521–22 (2016)).

could be expected to endure it." *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 818 (2008) (cleaned up). "[T]here is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress." *Doe v. Roe*, 362 Ga. App. 23, 30 (2021).

The Court concludes as a matter of law that the distress Daker allegedly suffered does not rise to the extreme level required to state an IIED claim. In short, Daker contends that, because Redfin's employees or client (1) sought unreasonable modifications to the purchase agreement that Daker refused and (2) then attempted to extort and coerce Daker by threatening to keep the property off the market for three more weeks, Redfin's actions went "beyond all possible bounds of decency" and should be "regarded as atrocious, and utterly intolerable in a civilized community." *Thompson-El v. Bank of Am., N.A.*, 327 Ga. App. 309, 312 (2014) (citation omitted). Taking Daker's allegations as true, no jury would find that Redfin's alleged actions would cause such severe emotional distress that no reasonable person could be expected to endure it. Certainly, a reasonable individual in Daker's position would be frustrated or angry with the threatened delay. But a reasonable person would not suffer unendurable psychic pain.

Daker's new contention that "he suffered emotional distress so severe that no reasonable person could be expected to endure it" is simply a conclusory statement of law that does not establish that he has stated a claim for relief. *Accord*

*Blue View Corp. v. Bell*, 298 Ga. App. 277, 279–80 (2009); *Giles v. Manser*, 757 F. App'x 891, 893 (11th Cir. 2018) ("Thus, to survive a motion to dismiss under Georgia IIED law, Giles was required to plead more than the conclusory allegation that he suffered IIED."); *Owens v. Bank of Am., N.A.*, No. 3:15-cv-00065-TCB-RGV, 2015 WL 12507425, at *7 n.11 (N.D. Ga. Dec. 4, 2015) (finding that the plaintiffs had not stated an IIED claim because "while plaintiffs assert that they suffered 'severe emotional distress and anger and sadness,' . . . they have not plausibly alleged that they suffered any 'severe' emotional distress as defined under Georgia law"), *adopted by* 2015 WL 11978537 (N.D. Ga. Dec. 30, 2015); *Williams v. Specialized Loan Servicing LLC*, No. 1:16-CV-0638-RWS-LTW, 2017 WL 2903350, at *3 (N.D. Ga. Jan. 3, 2017) ("Plaintiff's conclusory statements reciting the elements of [an IIED claim] . . . simply fail to state a plausible claim for relief.").

### D. Negligent Hiring/Retention

Daker concedes that there is no cause of action for "unethical hiring practices," and he agrees that the claim should be construed as a negligent-hiring/retention claim.[22] But he disagrees with the Magistrate Judge's determination that the Amended Complaint fails to allege that Sheena Anwer and Sweet were unsuited for their employment or that Redfin knew (or should have

---

[22] ECF 65, at 10–11.

known) this.[23] Daker points out that he alleged that he "repeatedly complained to Redfin's customer service and complaint departments about Sheena Anwer's unethical and dishonest behavior."[24] Daker further argues that Sheena Anwer's alleged unsuitability for her job is a fact-based determination that cannot be made at the motion-to-dismiss stage. Daker contends that, given the complaints he lodged against the two Redfin employees, he should be allowed discovery to determine whether other people complained and placed Redfin on notice.

> Under Georgia law,
>
>> an "employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency." O.C.G.A. § 34-7-20. "[L]iability for negligent hiring or retention requires evidence that the employer knew or should have known of the employee's propensity to engage in the type of conduct that caused the plaintiff's injury." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1247 (11th Cir. 2001). A negligent retention claim is properly dismissed when there is no underlying tort upon which to base it. *Eckhardt v. Yerkes Reg'l Primate Ctr.*, 561 S.E.2d 164, 166 (Ga. Ct. App. 2002).
>
> *Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 297 (11th Cir. 2012).

Negligent retention is a necessarily derivative claim that survives only "to the extent that the underlying substantive claims survive . . . ." *MARTA v. Mosley*, 280

---

[23] *Id.* at 11.

[24] *Id.*

Ga. App. 486, 489 (2006). Here, Daker's alleged injury is based on the purported IIED. Because Daker's IIED claim does not survive, "the essentially derivative claim of negligent retention also fails." *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39, 41 (1999); *accord Coleman v. Hous. Auth. of Americus*, 191 Ga. App. 166, 167 (1989) (stating that, without sufficient evidence to support an action for IIED against one defendant, "the causes of action against the other defendants [including negligent hiring], which are essentially derivative, must fall").

### E. Motion for Contempt and Sanctions

Prior to service being effected on the then-named Defendants, this matter was dismissed after a 28 U.S.C. § 1915A frivolity screening because the Court determined that it lacked subject matter jurisdiction.[25] Plaintiff appealed, and the Eleventh Circuit reversed.[26] Included with the Eleventh Circuit's opinion was a form memorandum to the parties stating: "Pursuant to Fed. R. App. P. 39, costs taxed against the appellee."[27] Daker then submitted a bill of costs, which the Eleventh Circuit clerk approved to tax costs against "Appellee" in the amount of

---

[25] ECF 24.

[26] ECF 33.

[27] *Id.* at 6.

$507.95.[28] At that point, there was no actual Appellee because no Defendant had been served with process.

Apparently based on the Eleventh Circuit's taxation of costs against the non-existent "Appellee," Daker has demanded that Redfin pay him the taxed costs. Redfin has not made payment, so Daker moves this Court to hold Redfin "in contempt and sanction [it] for failing to pay Plaintiff the bill of costs of $507.95."[29] Redfin responds that it was not served with process until after the appeal had been completed. Since it had not been joined as a party at the time the bill of costs was entered, Redfin contends the Eleventh Circuit was without jurisdiction to tax costs against it.[30] The Magistrate Judge agreed with Redfin and denied Daker's sanctions motion.[31]

Daker objects that Redfin appeared in both this Court and the Eleventh Circuit before he filed his notice of appeal. He argues that Redfin therefore submitted to the jurisdiction of the courts in this matter. The Magistrate Judge disagreed. "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been

---

[28] ECF 34, at 4.

[29] ECF 50.

[30] ECF 52, at 2–3.

[31] ECF 60, at 14.

served."[32] The Magistrate Judge also noted that, contrary to Daker's argument, "an attorney appearance does not confer personal jurisdiction over the defendant under the current Federal Rules of Civil Procedure."[33] Daker purports to distinguish the cases on which the Magistrate Judge relied by asserting that counsel in those cases had not filed entries of appearance. Daker further argues that Redfin has not sought a recall of the Eleventh Circuit's mandate or otherwise challenged the grant of costs. As a result, Daker contends that this Court is bound by the Eleventh Circuit's judgment.

There does not appear to be any binding precedent directly on point. The Eleventh Circuit has made clear that service is a prerequisite for a court's personal jurisdiction over a defendant. *Pardazi*, 896 F.2d at 1317. However, Daker correctly notes that the issue of an appearance of counsel did not arise in that case. And objections to personal jurisdiction can be waived. *Id.* For example, the Sixth Circuit has concluded that a general entry of appearance by counsel waives challenges to personal jurisdiction. *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011). But "'a pro forma notice of appearance of counsel,' often only one page or sentence, is not the sort of participation in litigation that constitutes a submission to the personal

---

[32]  *Id.* (quoting *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990)).

[33]  *Id.* (citing *Pouyeh v. Pub. Health Tr. of Jackson Health Sys.*, 718 F. App'x 786, 790–91 (11th Cir. 2017)).

jurisdiction of the district court." *Blessing v. Chandrasekhar*, 988 F.3d 889, 897 (6th Cir. 2021) (quoting *Gerber*, 649 F.3d at 524).

In this Court, Redfin's counsel's appearance was limited and made "without waiving objection as to improper service or jurisdiction."[34] A review of the record demonstrates that, other than the entry of appearance, counsel for Redfin did not file anything in this Court or the Eleventh Circuit until after it waived service. Redfin therefore did nothing to submit to this Court's (and by extension the Eleventh Circuit's) jurisdiction until September 2022[35] — after the Court of Appeals had assessed costs. *Taylor v. Pekerol*, No. 5:14-CV-96-RH-GRJ, 2015 WL 12979108, at *1 (N.D. Fla. Nov. 30, 2015) (holding that costs assessed against the "appellee" by the Eleventh Circuit could not be taxed against a defendant who had not yet been served); *cf. Stoppa v. Bal Harbour Vill.*, 385 F. App'x 932, 934 (11th Cir. 2010) (indicating that a person who has not been joined to an action is not bound by its judgment). Daker's motion for contempt and sanctions is therefore denied without prejudice. Redfin may raise the appropriate challenge to the taxation of costs against it with the appropriate court.

---

[34] ECF 5, at 1.

[35] ECF 47.

## IV. Conclusion

The Court **OVERRULES** Daker's objections and **ADOPTS** the R&R [ECF 60] as the Order of the Court as modified herein. Redfin's motion to dismiss the amended complaint [ECF 48] is **GRANTED**, and the instant action is **DISMISSED** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**SO ORDERED** this 21st day of September, 2023.

Steven D. Grimberg
United States District Court Judge